A. Dean Bennett, ISB #7735
Zachery J. McCraney, ISB #11552
HOLLAND & HART LLP
800 West Main St., Suite 1750
P.O. Box 2527
Boise, ID 83702-7714
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
Email: adbennett@hollandhart.com
          zjmccraney@hollandhart.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DR. MICHAEL HAJJAR, MD, an individual, DR. THOMAS MANNING, MD, PhD, an individual, and NS SUPPORT, L.L.C. d/b/a Neuroscience Associates,<br><br>Plaintiffs,<br><br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD, CLINICAL NEUROSCIENCE MANAGEMENT, PC, d/b/a Northwest Neurosurgery Associates, DR. KENNETH LITTLE, MD, an individual,<br><br>Defendants. | Case No.  1:23-cv-00367-AKB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 11]** |

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT .................................................................................................................................1

    I.    PLAINTIFFS' PROCEDURAL ARGUMENTS LACK MERIT. ......................................................1

    II.    PLAINTIFFS' OPPOSITION CONFIRMS THEY CANNOT STATE AN ANTITRUST CLAIM. ............3

        A.    Plaintiffs do Nothing More Than Reiterate Their Conclusory and Irrelevant Allegations, None of Which Support Harm to Competition. ....................................3

        B.    Plaintiffs' Allegations of Antitrust Injury are not Sufficient. ....................................6

        C.    Plaintiffs Fail to Allege Concerted Action for Their Section 1 Claim. .....................8

        D.    Plaintiffs Fail to Allege Anticompetitive Conduct and Specific Intent. ....................9

CONCLUSION ............................................................................................................................10

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Alivecor, Inc. v. Apple Inc.*,
  592 F. Supp. 3d 904 (N.D. Cal. 2022) ...................................................................................3

*Am. Needle, Inc. v. NFL*,
  560 U.S. 183 (2010).................................................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................2

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................................................3

*Davis v. HSBC Bank*,
  691 F.3d 1152 (9th Cir. 2012) ................................................................................................2

*Dreamstime.com, LLC v. Google LLC*,
  54 F.4th 1130 (9th Cir. 2022) ...............................................................................................10

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
  504 U.S. 451 (1992).................................................................................................................4

*Fisher v. Aurora Health Care, Inc.*,
  558 F. App'x 653 (7th Cir. 2014) ...........................................................................................8

*Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*,
  582 F.3d 1216 (10th Cir. 2009) ..............................................................................................4

*Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assocs.*,
  787 F. Supp. 2d 725 (N.D. Ill. 2011) ..................................................................................5, 8

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ..............................................................................................3, 9

*Miesen v. Hawley Troxell Ennis & Hawley LLP*,
  No. 1:10-cv-00404-DCN, 2022 U.S. Dist. LEXIS 82571 (D. Idaho May 5, 2022) ..................2

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
  305 F. Supp. 3d 1065 (N.D. Cal. 2018) .................................................................................7

*Prime Healthcare Servs. v. SEIU*,
  642 F. App'x 665 (9th Cir. 2016) ...........................................................................................3

*Rutman Wine Co. v. E. & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ..................................................................................................2

*Saint Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys., Ltd.*,
    778 F.3d 775 (9th Cir. 2015) ........................................................................................6

*SmileCare Dental Grp. v. Delta Dental Plan*,
    88 F.3d 780 (9th Cir. 1996) .........................................................................................4

*St. Alphonsus Med. Ctr. – Nampa v. St. Luke's Health Sys. Ltd.*,
    No. 1:12-CV-00560-BLW, 2014 U.S. Dist. LEXIS 9264 (D. Idaho Jan. 24, 2014) .................6

*Toranto v. Jaffurs*,
    297 F. Supp. 3d 1073 (S.D. Cal. 2018) .....................................................................7, 8

*Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ...................................................................................................10

## OTHER AUTHORITIES

Federal Rule of Evidence 201(b) ..........................................................................................3

Federal Rule of Civil Procedure 15(a) .................................................................................1

**INTRODUCTION**

Plaintiffs' opposition confirms that the Amended Complaint boils down to conclusory and irrelevant allegations, none of which are sufficient to state an antitrust claim. Plaintiffs basically argue that they are entitled to have Defendants subsidize their neurosurgery practice by paying Plaintiffs to fulfill their ER call obligations—something Neuroscience Associates itself refuses to do. No policy or agreement—and certainly not the antitrust laws—require any such thing.

**ARGUMENT**[1]

I. **PLAINTIFFS' PROCEDURAL ARGUMENTS LACK MERIT.**

Plaintiffs spend much of their opposition arguing that Defendants' motion to dismiss should be denied due to perceived procedural failures. *See* Opp'n to Defs.' Mot. to Dismiss [Dkt. 12] ("Opp.") at 4-7. It shouldn't.

First, Defendants' counsel apologize to the Court and Plaintiffs' counsel for not consulting with Plaintiffs' counsel before filing their motion. That failure, however, does not justify denial of the motion. By way of explanation (but not excuse), counsel for Defendants note that prior to filing the motion, it was apparent that the "perceived shortcomings" of the Amended Complaint could not be cured by a second amendment.[2] And for good reason: the refusal of St. Luke's to pay "independent neurosurgeons for emergency department call coverage" (¶ 3 and passim) is the foundation for Plaintiffs' claims. Of course, Defendants argue that it was not anticompetitive for St. Luke's to pay its employed and affiliated neurosurgeons for taking call, but not pay independent neurosurgeons such as Plaintiff Dr. Hajjar. No amendment could reconcile the two opposing arguments and Plaintiffs do not propose one in

---

[1] Citations in the form ¶ _ reference the First Amended Complaint [Dkt. 4].

[2] Plaintiffs already used their one amendment "as a matter of course" pursuant to Federal Rule of Civil Procedure 15(a).

REPLY IN SUPPORT OF MOTION TO DISMISS - 1

their opposition. *See Miesen v. Hawley Troxell Ennis & Hawley LLP*, No. 1:10-cv-00404-DCN, 2022 U.S. Dist. LEXIS 82571, at *38-39 (D. Idaho May 5, 2022) (Nye, J.) (defendants' failure to contact opposing counsel prior to filing motion did not warrant striking defense).

Second, the three hospital exhibits and two articles that Plaintiffs take issue with (Opp. at 6-7) were properly included in Defendants' motion. But even if they weren't, they don't affect the merits of Defendants' arguments and don't justify opening discovery, especially because the "costs of discovery in [antitrust] actions are prohibitive." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The three hospital exhibits were incorporated into the Amended Complaint by reference. The Court may, in its discretion, "take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.'" *Davis v. HSBC Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012) (citation and alterations omitted). The Amended Complaint cites both the PSA (¶¶ 31-32, 59, 77) and the Bylaws (¶ 68), and the MS Regulations are incorporated into the Bylaws. Mem. in Supp. of Mot. to Dismiss [Dkt. 11-1] ("MTD") at 5.[3] Plaintiffs' opposition also references the PSA and the MS Regulations. *See* Opp. at 11, 16-17; *Davis*, 691 F.3d at 1161 (plaintiff's "ongoing and substantial reliance on the documents as a basis for his allegations substantially weakens his position") (internal quotations, alterations, and citations omitted). And notably, Plaintiffs do not question the authenticity of any exhibit.

Moreover, each exhibit is central to Plaintiffs' claims. The PSA directly addresses Plaintiffs' conspiracy claim and their contention that Northwest Neurosurgery Associates' ("Northwest") neurosurgeons only refer patients to St. Luke's for treatment. *See, e.g.*, ¶¶ 31-32,

---

[3] Pin cites to Dkt. 11-1 are to the actual memorandum, not the docket notation.

REPLY IN SUPPORT OF MOTION TO DISMISS - 2

34; Opp. at 3, 6.  And Plaintiffs contend that "the document that forms the basis of the Complaint" is the August 2022 call policy that "requires Neuroscience Associates to provide 24/7/365 call coverage[.]"  Opp. at 6.  The August 2022 call policy flows from and is intended to enforce St. Luke's Bylaws.  *See* MTD at 13.  Therefore, the Bylaws, and the MS Regulations incorporated into the Bylaws, are central to Plaintiffs' claims.  *See Alivecor, Inc. v. Apple Inc.*, 592 F. Supp. 3d 904, 912-13 (N.D. Cal. 2022) (exhibits "referenced only once or twice" in the complaint formed the basis of plaintiff's claim because they were cited "as support for its allegations related to the relevant product market").

The Court also may take judicial notice of the "articles about St. Luke's accolades" that are "reference[d]" (Opp. at 7) in the background section of Defendants' motion because their accuracy "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Both articles "appear on publicly available websites and are thus proper subjects for judicial notice."  *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 617 (N.D. Cal. 2021) (citations omitted).  Notably, Plaintiffs rely on multiple articles in paragraphs 95-99 of the Amended Complaint.

Thus, the Court may consider each document at issue.  But if it finds otherwise, it should exercise its discretion and disregard them because none are necessary to Defendants' motion.

**II.**     **PLAINTIFFS' OPPOSITION CONFIRMS THEY CANNOT STATE AN ANTITRUST CLAIM.**

    **A.**     **Plaintiffs do Nothing More Than Reiterate Their Conclusory and Irrelevant Allegations, None of Which Support Harm to Competition.**

Plaintiffs fail to recognize that, to establish harm to competition, they ***must*** identify harm to "*competition itself*" in the relevant market, "not merely to competitors."  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 996 (9th Cir. 2020) (emphasis in original); *Prime Healthcare Servs. v. SEIU*, 642 F. App'x 665, 666 (9th Cir. 2016) ("No antitrust violation occurs unless the exclusive agreement is intended to or actually does harm competition in the relevant market."); MTD at 7-

REPLY IN SUPPORT OF MOTION TO DISMISS - 3

9. Plaintiffs' opposition, like their Amended Complaint, continues to rely on conclusory and irrelevant allegations and confirms that the only harm alleged is to Plaintiffs alone.

Plaintiffs' argument about alleged harm to competition fails because it is based on the false presumption that Drs. Hajjar and Manning somehow are *entitled* to be paid by St. Luke's for providing call coverage. Opp. at 2, 10-11. Yet they cite no agreement or hospital policy to that effect. St. Luke's has elected to pay its *employed and affiliated neurosurgeons* for all the services they provide, including call services. MTD at 15. Neuroscience Associates likewise is free to compensate its members for call, or have its members share call to ease the burden of call coverage. *See* Opp. at 12, n.4 (noting Drs. Hajjar and Manning could "divvy up call coverage" before Dr. Manning relinquished his privileges). Indeed, at one point, at least four members of Neuroscience Associates shared call at St. Luke's. ¶¶ 44, 53. That Drs. Manning, Bridges, and Lochhead elected to relinquish their medical staff privileges at St. Luke's is their choice. ¶¶ 54, 60.

Additionally, the Amended Complaint alleges that St. Luke's neurosurgeons compete with Plaintiffs. *See* ¶¶ 70, 88, 92. Nothing requires St. Luke's to subsidize the practices of competing independent physicians like Drs. Hajjar and Manning by paying them to meet the call obligation required of all members of the St. Luke's medical staff. A hospital's refusal to deal with a competing physician "does not constitute anticompetitive conduct within the meaning of Section 2 of the Sherman Act." *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1221 (10th Cir. 2009); *see also SmileCare Dental Grp. v. Delta Dental Plan*, 88 F.3d 780, 786 (9th Cir. 1996) ("it is well-established that competitors do not have a general duty to deal with one another") (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 483 n.32 (1992)). St. Luke's has legitimate reasons to pay its employed and affiliated neurosurgeons for call, and legitimate business reasons not to pay Plaintiffs. And

besides, Plaintiffs presumably bill, collect, and retain fees for all physician services provided when on call, which offsets any perceived financial burden for being on call.

Recognizing that it is not anticompetitive for St. Luke's to restrict call payments to its employed and affiliated neurosurgeons, it becomes clear that Plaintiffs' argument that the call policies have caused harm to competition is not plausible. First, Plaintiffs claim that the "arbitrary and unreasonable call coverage policies" have inhibited the ability of independent neurosurgeons to compete with St. Luke's and its neurosurgeons. Opp. at 12. Yet, as indicated, St. Luke's has legitimate business reasons for adopting its call policies and has no obligation to subsidize Plaintiffs' neurosurgical practice. Because the call policies are not anticompetitive, Plaintiffs' allegation that the call policies have harmed competition in the alleged relevant professional neurosurgical services market is not plausible. MTD at 8-9.

Second, Plaintiffs' allegation that forcing independent neurosurgeons from St. Luke's diminishes patient choice doesn't support harm to competition. Opp. at 10. Even if Dr. Hajjar relinquishes his privileges at St. Luke's, qualified neurosurgeons (and independent neurosurgeons) will still be available to patients at St. Luke's and other hospitals in the relevant market. *See* ¶ 28; *Frantzides v. Northshore Univ. HealthSystem Faculty Practice Assocs.*, 787 F. Supp. 2d 725, 732 (N.D. Ill. 2011) (dismissing action because "so long as these patients were treated by another qualified physician, there has only been a reduction in suppliers, not in the output of patient care").

Third, Plaintiffs' allegations that St. Luke's has "the leverage to charge higher rates" and potentially can "diminish[] patient choice" in ancillary markets are irrelevant and conclusory. Opp. at 9-10. Those allegations relate to the general health care market and service markets such as imaging and physical therapy, not to the alleged relevant neurosurgical market in this case. And even if Plaintiffs' allegations were directed at the alleged relevant market, the pertinent

REPLY IN SUPPORT OF MOTION TO DISMISS - 5

inquiry is not whether St. Luke's *has* the ability to raise prices or exclude competition, but whether it *uses* or *intends to use* that ability to harm consumer welfare.[4] There are no plausible allegations to that effect. The Amended Complaint cannot survive on antitrust buzz words and speculation. *See* MTD at 7-8.

Finally, Plaintiffs contend "there is harm to the neurosurgical job market[.]" Opp. at 11. But the Amended Complaint does not assert a claim for unlawful conduct in the job market and any impact of conduct in the job market cannot sustain a claim of a harm to competition in the alleged professional neurosurgical services market.

In sum, Plaintiffs basically argue that St. Luke's call policies have caused them to make less money because they were not paid for call coverage. But lost wages do not reflect competitive harm in the alleged relevant market, particularly when the call policies are not anticompetitive. MTD at 8-9.

### B. Plaintiffs' Allegations of Antitrust Injury are not Sufficient.

Plaintiffs all but confirm that they can't allege antitrust injury. As a threshold matter, Plaintiffs conflate the alleged anticompetitive conduct with antitrust injury. *See* Opp. at 12 (heading 2). They are not the same. To allege antitrust injury, Plaintiffs must allege facts

---

[4] Plaintiffs' reliance on the *St. Alphonsus Med. Ctr.* case (Opp. at 10) is misplaced for two reasons. First, that merger case involved a different relevant market: Adult primary care in Nampa—not neurosurgery in Ada and Canyon Counties that is alleged here. *Saint Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys., Ltd.,* 778 F.3d 775, 783, 784 (9th Cir. 2015); ¶¶ 84, 86.

Second, any suggestion that the *Saint Alphonsus* case supports Plaintiffs' allegation that Defendants have acted with anticompetitive intent is false. While intent is not relevant in a Clayton Act merger case, both the district court and court of appeals went out of their way to observe that St. Luke's "genuinely intended to move toward a better health care system, and expressed its belief that the merger would 'improve patient outcomes' if left intact." *Id.* at 782; *St. Alphonsus Med. Ctr. – Nampa v. St. Luke's Health Sys. Ltd.*, No. 1:12-CV-00560-BLW, 2014 U.S. Dist. LEXIS 9264, at *7 (D. Idaho Jan. 24, 2014) ("St. Luke's is to be applauded for its efforts to improve the delivery of health care in the Treasure Valley.").

REPLY IN SUPPORT OF MOTION TO DISMISS - 6

showing anticompetitive conduct *and* that their "loss flows from an *anticompetitive aspect* or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition." *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 305 F. Supp. 3d 1065, 1073 (N.D. Cal. 2018) (emphasis in original) (citation omitted); MTD at 9-11.  They allege neither.

Plaintiffs state that "the anticompetitive conduct is Defendants' burdensome call coverage policies to ensure independent neurosurgeons cannot maintain privileges at St. Luke's." Opp. at 13.  As discussed above, the allegation that the St. Luke's call policies are anticompetitive is not plausible.  *Supra* at 4-5.  The alleged exclusion of a few independent neurosurgeons from one hospital (but not the entire relevant market) via an allegedly burdensome call coverage policy does not constitute anticompetitive conduct.  *Id.*; MTD at 10-11.  A "decrease in one competitor's market share affects competitors, not competition." *NorthBay Healthcare Grp., Inc.*, 305 F. Supp. 3d at 1073 (citation and alterations omitted).

As for the actual antitrust injury, Plaintiffs state that their "antitrust injury . . . is the arbitrary requirement that Neuroscience Associates provide 24/7/365 call coverage with no compensation[.]" Opp. at 12.  But the call policy is the alleged *anticompetitive conduct*, not the *antitrust injury*.  Contrary to Plaintiffs' suggestion, the "anticompetitive conduct" cannot be the "antitrust injury itself." *Id*.  Plaintiffs can't deflect from the fact that the only actual injury alleged is that Plaintiffs are "providing 24/7/365 call coverage to St. Luke's for no compensation." *Id*. at 13; *see* MTD at 8.  Injury based on the belief that Defendants "should give [Plaintiffs] more money" is not antitrust injury and doesn't flow from anticompetitive conduct. *NorthBay Healthcare Grp.*, 305 F. Supp. 3d at 1074.

Plaintiffs' reliance on *Toranto* is misplaced.  Opp. at 14-15.  There, the court held that the plaintiff sufficiently alleged antitrust injury when the operative complaint included allegations

REPLY IN SUPPORT OF MOTION TO DISMISS - 7

that the defendants, who allegedly held 100% of the relevant market, prevented the plaintiff from practicing his medical specialty *anywhere* in the entire relevant market and further prevented "highly complex pediatric craniofacial surgery procedures from being *available at all* in" the relevant market. *Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1089-93 (S.D. Cal. 2018) (emphasis added). That differs from here, where the specialty at issue, neurosurgical services, will still be available to the public whether or not Plaintiffs decide to relinquish their medical privileges at St. Luke's. *See Frantzides*, 787 F. Supp. 2d at 732 ("so long as these patients were treated by another qualified physician, there has only been a reduction in suppliers, not in the output of patient care"). And notably, unlike *Toranto*, here, Plaintiffs are *not being denied privileges*; rather, they are demanding that St. Luke's *subsidize their practice*.

Plaintiffs' critique of *Fisher* also falls short. *See* Opp. at 14; MTD 11. There, as part of its standing analysis, the court stated that "the *injury* that Fisher alleges he suffered [the loss of medical services provided by independent physicians] does not appear to be the type that Congress sought to redress with antitrust laws[,]" and that Fisher could "point[] to no case law that directly supports the argument that the loss of medical services provided by independent physicians is the *type of injury* recognized by antitrust laws." *Fisher v. Aurora Health Care, Inc.*, 558 F. App'x 653, 656 (7th Cir. 2014) (emphasis added). The same is true here. MTD at 1, 15.

C.    **Plaintiffs Fail to Allege Concerted Action for Their Section 1 Claim.**

Plaintiffs confusingly argue that Defendants have taken "conflicting and self-serving positions on whether an employer-employee relationship exists." Opp. at 16. As stated in Defendants' motion, however, Plaintiffs are the ones who "*plead themselves* out of being able to allege a conspiracy" because "*[a]s pled*, St. Luke's, Northwest, and Dr. Little share a complete unity of economic interest[.]" MTD at 12 (emphasis added). Indeed, the Amended Complaint repeatedly refers to Northwest's neurosurgeons as employees of St. Luke's or functionally

equivalent to employees. *See, e.g.*, ¶¶ 4, 32, 54, 65, 67, 109. Those allegations, rather than anything in Defendants' motion, are the "basis for inferring an employer-employee relationship [or its functional equivalent] exists between Defendants." Opp. at 16. Regardless, the test isn't whether St. Luke's and Northwest are separate entities—the test is "whether there is [concerted action] amongst 'separate economic actors *pursuing separate economic interests*,'" which is not alleged. *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 195 (2010) (citation omitted) (emphasis added).

Plaintiffs also fail to point to specific facts showing conspiratorial actions among each of the Defendants. Plaintiffs' primary argument is that it is Defendants' "unreasonable call coverage policies which prove[] the conspiracy[.]" Opp. at 17. But Plaintiffs can't avoid the conclusion that the call policies are intended to, and do, enforce the Bylaws' requirements for call coverage. And there are logical, procompetitive explanations for the policy, including providing patients with emergency and charitable care, ensuring adequate call coverage, paying employees, and as stated, enforcing the Bylaws. *See* MTD at 5, 13-15; *supra* at 4-5.

D. **Plaintiffs Fail to Allege Anticompetitive Conduct and Specific Intent.**

Plaintiffs fail to show how their allegations support anticompetitive conduct and they fail to allege the required specific intent to monopolize for their Section 2 claim. Defendants are not excluding competitors in the professional neurosurgical services market by allegedly "[r]equiring independent neurosurgeons to conduct their own call coverage[.]" *See* Opp. at 19. "[S]ome or all" of the members of Neuroscience Associates practice at other hospitals in the alleged relevant market. ¶ 28. And as repeatedly stated, "harm to one or more competitors" does not, by itself, "harm the competitive process and thereby harm consumers." *Qualcomm Inc.*, 969 F.3d at 990; *see* MTD at 8, 10-11, 15.

And St. Luke's legitimate business purposes for the call policy (*see, e.g.*, MTD at 5, 13-15; *supra* at 4-5) have not been rebutted by Plaintiffs. Plaintiffs' contention that "St. Luke's will

REPLY IN SUPPORT OF MOTION TO DISMISS - 9

retain more patients . . . because patients will not be referred to outside resources or providers" makes little sense.  Opp. at 19.  If patients value being seen by independent neurosurgeons, then they would follow Dr. Hajjar and the other Plaintiffs to other hospitals, which would actually take patients away, rather than direct them to, St. Luke's.

Next, Plaintiffs do not directly address their failure to allege specific intent to monopolize, which is an element of a Section 2 claim.  MTD at 16.  Alleging facts purportedly supporting the *inference* of specific intent is not enough, and simply alleging that Defendants possess market power (Opp. at 18-19) is not sufficient to meet Plaintiffs' burden of alleging specific intent to monopolize.  "Merely possessing monopoly power and charging monopoly prices—without accompanying anticompetitive conduct—is not enough to state a claim under Section 2."  *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1141 (9th Cir. 2022) (citing *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)).

## CONCLUSION

Plaintiffs' First Amended Complaint should be dismissed in its entirety.  Plaintiffs' antitrust claims (Counts I and II) should be dismissed with prejudice.  And the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claim (Count III).

DATED this 12th day of February, 2024.

        HOLLAND & HART LLP

        By    */s/ A. Dean Bennett*
             A. Dean Bennett
             Zachery J. McCraney
             Attorneys for Defendants

31347943_v5